UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE DOE RUN RESOURCES CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 4:20-cv-01019-AGF ) |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant St. Paul Fire and Marine Insurance Company's ("St. Paul") Motion (ECF No. 17) to Dismiss Plaintiff The Doe Run Resources Corporation's ("Doe Run") complaint.  St. Paul asserts that Doe Run's claims are barred under the doctrines of issue preclusion and claim preclusion.  For the reasons set forth below, the Court will grant St. Paul's motion.

**BACKGROUND**[1]

Doe Run is a natural resources company that produces lead and lead concentrate through mining, milling, and smelting operations.  Doe Run Peru, a subsidiary of Doe Run, owned and operated a metallurgical plant in La Oroya, Peru (the "La Oroya Plant").

---

[1]    The facts summarized below are drawn from the pleadings, documents incorporated into the pleadings by reference, and public records of which the Court may take judicial notice. *See Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015) (listing documents properly considered on a motion to dismiss).

Since October 2007, more than two dozen minor residents in the vicinity of the La Oroya Plant have filed more than two dozen lawsuits (collectively "the Underlying Lawsuits") against Doe Run alleging that Doe Run released harmful substances, such as lead, arsenic, cadmium, and sulfur dioxide, into the environment and caused injuries to the plaintiffs.  Specifically, the plaintiffs in these Underlying Lawsuits asserted causes of action against Doe Run for negligence, civil conspiracy, strict liability, and contribution, alleging that Doe Run and its agents and affiliates[2] "pursuant to various written agreements, including the various Doe Run partnership agreements . . . expressly or impliedly assumed liabilities arising out of the operation of the La Oroya complex and related operations" and "acted jointly and in conspiracy with each other" to "fail[] to adequately control the emissions" from the La Oroya Plant.  *See, e.g.*, ECF No. 19-8 at ¶ 34.

All of the Underlying Lawsuits are being prosecuted by the same law firm and contain similar allegations.  Litigation in the Underlying Lawsuits is ongoing, and the law firm representing the plaintiffs continues to file related complaints on behalf of new plaintiffs.

St. Paul issued Policy No. GB9400566 (the "Policy") providing international general liability coverage to Doe Run with two consecutive policy periods spanning from December 31, 2005 to November 1, 2007.  Subject to its terms, conditions and exclusions, the Policy covers bodily injury and property damage caused by an "event" outside of the United States during the policy period and provides related defense coverage.  One such exclusion is for

---

[2] The plaintiffs in the Underlying Lawsuits named several alleged agents and affiliates of Doe Run as additional defendants in their complaints, but Doe Run Peru was not named as a defendant in any of the Underlying Lawsuits.

pollution injury or damage (the "Pollution Exclusion"), which bars coverage for any injury or damage resulting from pollution on any protected person's premises. *See* 531 S.W.3d at 511; *see also* ECF No. 20, Def.'s Ex. 4, at LR000336, 000338.

In 2010, Doe Run filed suit in the Circuit Court of St. Louis County ("*Doe Run I*") against four other insurance companies for reimbursement of fees incurred in defending the 23 Underlying Lawsuits then pending (collectively, the "*Reid* Lawsuits"). Doe Run added St. Paul to the suit in 2012. Doe Run's complaint as against St. Paul sought a declaration that St. Paul was obligated to provide full and complete coverage for defense costs and supplemental expenses in connection with the *Reid* Lawsuits, as well as damages for St. Paul's alleged breach of contract and unreasonable refusal to pay. *See* ECF No. 19-4, Def.'s Ex. 3.

On cross motions for summary judgment filed in *Doe Run I*, Doe Run argued that the Pollution Exclusion does not bar coverage and that the Pollution Exclusion was ambiguous. More specifically, Doe Run argued that the Exclusion was ambiguous as to whether lead was a pollutant and that applying the Exclusion to bar coverage for the *Reid* Lawsuits would preclude coverage for Doe Run's essential business materials. Both the trial court and the Missouri Court of Appeals ruled in Doe Run's favor as to these arguments. *See Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, No. ED 103026, 2016 WL 5390200 (Mo. Ct. App. Sept. 27, 2016). However, on October 31, 2017, the Missouri Supreme Court reversed with a unanimous opinion concluding that "the pollution exclusion unambiguously bars coverage and St. Paul has no duty to defend Doe Run for the *Reid* Lawsuits." *Am. Guarantee & Liab. Ins.*, 531 S.W.3d at 515.

In determining whether the Pollution Exclusion barred coverage and, in turn, whether St. Paul had a duty to defend Doe Run, the state courts construed the *Reid* Lawsuits as broadly as possible to determine whether they "allege[d] facts that give rise to a claim potentially covered by the policy" or whether there were "facts that [were] known to the insurer or that [were] reasonably apparent to the insurer at the commencement of the suit establish a potential for coverage." *See Am. Guarantee & Liab. Ins.*, 2016 WL 5390200. Applying such a standard, the Missouri Supreme Court concluded, based on the arguments and evidence presented, that "[t]he effect of the pollution exclusion is clearly to proscribe the types of claims raised in the Reid lawsuits." *Id.* at 513.

Following the Missouri Supreme Court's ruling in *Doe Run I*, nine additional complaints were filed as part of the Underlying Lawsuits. In at least one of these new complaints, the plaintiffs added a claim for "negligent performance of a contract or undertaking," in which the plaintiffs allege that Doe Run's liability for the emissions was due to its negligence in performing services as a contractor for Doe Run Peru. According to Doe Run, expert discovery conducted in May of 2019 in the other Underlying Lawsuits—including the *Reid* Lawsuits—suggests that a similar claim or theory of liability "against Doe Run as a third-party contractor at the La Oroya Plant, and for alleged completed work by Doe Run at the plant" will soon be asserted by other plaintiffs in the Underlying Lawsuits. ECF No. 3 ¶¶ 24, 29, 36; ECF No. 28 at 1, 5.

Doe Run contends that this new theory of liability revealed that an exception to the Policy's Pollution Exclusion applies. Specifically, one of several exceptions in the Policy's Pollution Exclusion states: "Nor will we apply this exclusion to: bodily injury or property damage that results from your products or your completed work, other than waste products or

completed work . . . ." ECF No. 3 ¶ 25; ECF No. 33 Ex. A. "Your completed work" as defined in the Policy pertains to various work the insured is performing or service it is providing or that others are performing or providing for it, but it does not include any work done or while on a premises "that [the insured] rent[s] or lease[s] from others, or own[s]." ECF No. 20, Def.'s Ex. 4 at LR000324. Within the "Your completed work" definition, the Policy specifies at what time contracted work will be considered "completed." *Id.*

Believing that the contractor liability theory being pursued in the Underlying Lawsuits triggered coverage under the Your Completed Work Exception, Doe Run retendered a request for defense coverage to St. Paul on July 12, 2019. St. Paul again denied Doe Run's request for defense coverage for each of the Underlying Lawsuits.

On April 24, 2020, Doe Run filed the instant complaint (*Doe Run II*) in state court, again seeking a declaratory judgment that St. Paul owes defense coverage in each of the Underlying Lawsuits filed to date—a total of 32 lawsuits (Count I),[3] and asserting claims for breach of contract and unreasonable refusal to pay (Counts II and III, respectively). Doe Run's complaint "requests a judicial determination and declaration of Doe Run's rights and St. Paul's duties under the Policy with respect to defense coverage for each of the Underlying Lawsuits." ECF No. 3 ¶ 45. St. Paul removed the case to this Court, invoking the Court's diversity jurisdiction.

St. Paul now seeks dismissal of all three counts for failure to state a claim based on the doctrines of collateral estoppel and res judicata, also known as issue preclusion and claim

---

[3]     These 32 Underlying Lawsuits consist of the *Reid* Lawsuits and the nine additional lawsuits filed after the Missouri Supreme Court's decision in *Doe Run I*.

preclusion, respectively. St. Paul contends that issue preclusion bars *Doe Run II* because Doe Run is trying to relitigate a dispositive issue that the Missouri Supreme Court resolved in *Doe Run I*. St. Paul also contends claim preclusion bars *Doe Run II* because Doe Run's claims could have been and were litigated in *Doe Run I*.

Doe Run opposes the motion to dismiss and contends that neither issue nor claim preclusion applies. As an initial matter, although Doe Run's complaint in *Doe Run II* broadly requests a declaration with respect to defense coverage for each of the Underlying Lawsuits, in its opposition to St. Paul's motion to dismiss, Doe asserts that it is "seeking defense coverage solely for the new claims and solely contesting the new denial of those new claims." ECF No. 28 at 12.

Doe Run argues that issue preclusion does not apply because the "ultimate facts" at issue in *Doe Run II* are not identical to those in *Doe Run I*. Specifically, Doe Run notes that *Doe Run I* did not consider the applicability of the Your Work Exception. Doe Run also argues that applying issue preclusion here would be inequitable because Doe Run has not had a full and fair opportunity to litigate the applicability of the Your Completed Work Exception.

As to claim preclusion, Doe Run argues that the doctrine cannot apply to *Doe Run II* with respect to claims for coverage relating to the nine new Underlying Lawsuits that were not a part of *Doe Run I*. Doe Run further contends that claim preclusion cannot apply to *Doe Run II* in any event because the new contractor liability theory had not been raised in the *Reid* Lawsuits at the time of *Doe Run I* and, therefore, Doe Run could not have asserted an argument based on the Your Completed Work Exception at that time.

**DISCUSSION**

The defenses of issue preclusion and claim preclusion "may be raised in a motion to dismiss when the identity of the two actions can be determined from the face of the petition itself," including "public records and materials embraced by the complaint and materials attached to the complaint." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012) (internal citations omitted). In considering a motion to dismiss based on these doctrines, the Court must "accept the non-moving party's factual allegations as true and construe all reasonable inferences in favor of the nonmovant." *Schaefer v. Putnam*, 827 F.3d 766, 769 (8th Cir. 2016) (citation omitted).

The Court looks to Missouri law to determine whether either issue preclusion or claim preclusion applies. *See id.* ("The law of the forum that rendered the first judgment controls the res judicata analysis."); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003) ("We look to state law in determining whether to apply issue preclusion.").

**Issue Preclusion**

Issue preclusion is a legal doctrine that "bars the relitigation of factual or legal issues that were determined in a prior court action, and applies to bar relitigation in federal court of issues previously determined in state court." *Fischer v. Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999) (cleaned up and citation omitted). "Properly applied, the doctrine promotes judicial economy and finality in litigation, spares parties the expense and vexation attending multiple lawsuits, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Ideker v. PPG Indus., Inc.*, 788 F.3d 849, 854 (8th Cir. 2015) (cleaned up and internal citations omitted).

Under Missouri law, courts consider three factors in determining whether to apply issue preclusion: "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication." *Liberty Mut. Ins. Co.*, 335 F.3d at 758 (citing *King Gen. Contractors v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 500 (Mo. 1991)). "Furthermore, only those issues actually and necessarily decided in the first suit may have preclusive effect in a subsequent action." *Liberty Mut. Ins. Co..*, 335 F.3d at 758.

Courts sometimes apply a fourth factor: whether the party against whom preclusion is asserted "had a full and fair opportunity" to litigate the issue in the prior suit. *See, e.g., Shahan v. Shahan*, 988 S.W.2d 529, 532–33 (Mo. 1999). "However, the 'full and fair opportunity to litigate' factor was developed to analyze cases where the parties in the first action are not the same as those in the second." *Liberty Mut. Ins. Co.*, 335 F.3d at 758 (citations omitted). Where the parties are the same in both actions, "absent a strong showing to the contrary, we assume that both had a full and fair opportunity to litigate the relevant issues." *Id.* (citations omitted).

The parties here dispute the first factor, whether the issue in both cases is identical, and the fourth factor, whether Doe Run had a full and fair opportunity to litigate the issue. "Defining the issue in the prior litigation is crucial in determining whether issue preclusion is available." *Liberty Mut. Ins. Co.*, 335 F.3d at 759. In granting judgment in favor of St. Paul in *Doe Run II*, the Missouri Supreme Court actually and necessarily decided three relevant issues. The state court ultimately decided (1) whether St. Paul had a duty to defend Doe Run

- 8 -

in the *Reid* Lawsuits. In order to resolve that issue, the state court necessarily decided the sub-issues of: (2) whether the Pollution Exclusion was ambiguous and (3) whether the Pollution Exclusion barred coverage. *See Am. Guarantee & Liab. Ins.*, 531 S.W.3d at 510.

Likewise, in *Doe Run II*, the ultimate issue is whether St. Paul has a duty to defend Doe Run in the *Reid* Lawsuits and the other Underlying Lawsuits that arise out of the same emissions at issue in the *Reid* Lawsuits. The sub-issue is also the same: whether the Pollution Exclusion bars coverage. The fact that Doe Run now wishes to present evidence as to potential exceptions to the Pollution Exclusion does not distinguish the issues presented here from those presented in *Doe Run I*.

Doe Run argues that new pleadings and evidence in the Underlying Lawsuits that allege that Doe Run was acting as a contractor in performing work at the La Oroya Plant constitutes a change in the underlying facts such that issue preclusion should not apply. However, "[w]here the first and second actions are both based on an evaluation of the same historical facts, a litigant seeking to introduce newly discovered evidence otherwise in existence at the time of the first suit may not argue that the facts have changed in the time period between the two actions in order to avoid the preclusive effect of the first decision." *Liberty Mut. Ins. Co.*, 335 F.3d at 761.

*Liberty Mutual* guides the Court's analysis. In that case, like here, an insured sought to avoid the application of issue preclusion arising from earlier coverage litigation—in that case, referred to as "*LM I*"—that had declared that the insurer had no duty to defend the insured in ongoing underlying lawsuits arising out of environmental contamination at the insured's plant. *Id.* at 754-55. The court in *LM I*, like the court in *Doe Run I*, determined that the insurer had no duty to defend because the policy's pollution exclusion barred

- 9 -

coverage. *Id.* More specifically, the court in *LM I* determined, based on the evidence then presented, that the only sources of contamination at issue in the underlying lawsuits were airborne emissions that fell squarely within the policy's pollution exclusion. *Id.* at 756.

The insured in *Liberty Mutual*, like Doe Run, argued that issue preclusion should not apply because of new developments in the underlying lawsuits, including new underlying complaints that were filed after the conclusion of *LM I*. *Id.* Specifically, the insured pointed to a new theory that the contamination giving rise to the underlying claims resulted from a pipeline cut on the insured's property, rather than solely from airborne emissions. *Id.*

The Eighth Circuit rejected the insured's argument and held that issue preclusion barred the insured's second coverage lawsuit, referred to as "*LM II*." The Eighth Circuit found that "all of the events giving rise to [the insured's] liability in the underlying suits occurred before the filing of *LM I*," such that there was no change in the underlying facts. *Id.* at 761. The Eighth Circuit reasoned that Missouri courts would follow the "significant line of cases suggesting that litigation of an issue necessarily encompasses all arguments and evidence that could be presented to resolve the issue, and that the mere discovery of new evidence does not create a new issue"; in other words "litigants may not have a second opportunity to prove a fact or make an argument relating to an issue previously decided." *Id.* at 762.

Likewise, the Eighth Circuit concluded that application of issue preclusion to bar the insured's allegedly "new" coverage claims in *LM II* would not be inequitable. *Id.* at 764. The Eighth Circuit "did not believe believe that the Missouri courts would conclude that the dilatory discovery of the pipe cut ordered by [the insured]. . . . [was] sufficient for [the insured] to avoid the preclusive effect of the district court's findings in *LM I*." *Id.* In short,

the Eighth Circuit held: "Where the party sought to be precluded has completely failed to discover and present material evidence that was reasonably available, by no fault of any other party or insufficient court procedure, it is not unfair to bind them to the prior decision, despite the existence of evidence that may have changed the result." *Id.* at 765.

The same is true here.  All of the events giving rise to Doe Run's liability in the Underlying Lawsuits, including any work performed as a contractor at the La Oroya plant, occurred before the filing of *Doe Run I*.  Both *Doe Run I* and *Doe Run II* are based on evaluation of the same historical facts.

That Doe Run failed to discover or present material evidence related to its involvement in projects as a contractor at the La Oroya Plant, by no fault of any other party or insufficient court procedure, does not make application of issue preclusion unfair.  Indeed, the *Reid* Lawsuits broadly alleged liability based on Doe Run's "various written agreements" and "expressly or impliedly assumed liabilities" with respect to the La Oroya Plant.  *See, e.g.*, ECF No. 19-8 at ¶ 34.  And the Missouri courts broadly construed those pleadings to find any potential for coverage.  There is no reason that Doe Run could not have asserted an argument in *Doe Run I* that its work as a contractor at the La Oroya Plant somehow triggered an exception to the Pollution Exclusion.[4]  The Court will not give Doe Run a second opportunity to prove facts or make arguments related to the issue previously decided in *Doe*

---

[4]     Indeed, as St. Paul notes, if Doe Run's negligent completion of discrete contractor projects triggered coverage under the Your Completed Work Exception, then so must have the more wide-ranging acts of negligence alleged in the *Reid* Lawsuits.  It is not at all clear to the Court why Doe Run believes its actions as a contractor are so distinct from the actions described in the *Reid* Lawsuits as to warrant a different treatment under the Your Work Exception.

*Run I*—whether the Pollution Exclusion bars coverage for the Underlying Lawsuits.

Because the Court concludes that issue preclusion bars this lawsuit, it does not reach the question of whether claim preclusion also applies.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED**. ECF No. 17.

**IT IS FURTHER ORDERED** that Defendant's Motion to Amend Case Management Order is **DISMISSED as moot**.  ECF No. 47.

A separate Order of Dismissal will accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of August, 2021.